## HOWINGTON v. MADISON COUNTY.

1. The term bridge includes all the appurtenances necessary to its proper use, and embraces its abutments and approaches. That which is necessary as an approach, to connect the bridge with the highway, is an essential part of the bridge itself.

2. An allegation in a petition brought against a county, to recover for damage caused by a defect in a bridge, that the road commissioners and overseers of roads in the district in which the bridge was located had notice of the defect, is an averment of notice to the county, which is good as against a general demurrer.

3. It was error to sustain a general demurrer to the petition.

Submitted July 18,—Decided November 12, 1906.

Action for damages. Before Judge Holden. Madison superior court. September 5, 1905.

Mrs. Howington brought her action against the County of Madison, laying damages in the sum of $10,000. The petition alleged, that on September 16, 1904, the minor son of plaintiff, six years of age, was killed by the negligence and carelessness of the defendant, such negligence consisting of a defect in a public bridge erected by the defendant since December 29, 1888, the bridge constituting a part of one of the established public roads of the county. The deceased and his father were traveling the road in a wagon, with an ordinary load of hay, and came to a short bridge which was erected over a gully and low place in the road. The defendant had allowed the gully under the bridge to fill up and pond the water and mud under the bridge and immediately beyond it, thus causing a sudden decline of at least eight or ten inches from the bridge to the dirt in the road adjacent thereto. While passing over the bridge, without fault on the part of either, the wagon dropped suddenly eight or ten inches in the bog which the defendant had negligently and carelessly left along the side of the bridge, and threw the deceased and his father from the wagon to the ground, the skull

of the deceased being crushed by the fall and death ensuing within six hours thereafter. It is alleged that the death of the plaintiff's son was caused by the negligence of the defendant in allowing "the immediate drop off of 8 or 10 inches from the side of said bridge down into a boggy hole, so that the said bridge was 8 or 10 inches higher than the level or grade of the road immediately beyond said bridge." It was also alleged, that the defendant failed to keep the bridge and the approach thereto in repair, so that persons who traveled carrying ordinary loads could use the same with ease and safety; and that the attention of the defendant was called to the defect in the bridge, through the commissioners and overseers in the district in which the bridge was located. It was alleged that the deceased left no wife or child, and that the plaintiff was dependent upon him and he contributed to her support. To this petition the defendant interposed a general demurrer, which, after argument, the court sustained. The plaintiff excepted.

*W. W. Stark,* for plaintiff. *D. W. Meadow, J. E. Gordon, J. F. L. Bond,* and *B. T. Moseley,* for defendant.

COBB, P. J. (After stating the foregoing facts.)    A county is liable for injuries caused by defects in a county bridge constructed since the passage of the act of 1888. *Hackney* v. *Coweta County,* 117 *Ga.* 327. The petition alleges that the bridge in question was erected by the county since 1888, and that it is a public bridge of the county. "A bridge which constitutes a portion of a public road is necessarily a public bridge." *County of Tattnall* v. *Newton,* 112 *Ga.* 780. It is contended, though, that the injury did not result from a defect in the bridge, but from a defect in a public road leading to the bridge, and that there is no liability upon a county resulting from defects in a public road. Unless the defect complained of is a part of the bridge the county is not liable, and the petition was properly dismissed. While the county is not liable for a defect in a public road, that part of a public road which constitutes the abutment to the bridge, and which is absolutely essential to the existence and use of the bridge, is a portion of the bridge itself, and the obligation to keep the same in repair and the liability resulting from the failure to discharge the duty of repairing, applies to it to the same extent as it does to that portion of the structure ordinarily called the bridge. The term "bridge" includes all the appurtenances necessary to its proper use, and em-

braces its abutments and approaches. 4 Ency. Law (2d. ed.) 919. The approach to a bridge constitutes a part of it, and a duty to repair the bridge includes a repair of its approaches. 2 Shear. & Redf. on Neg. (5th ed.) § 392. In *Daniels* v. *Athens, 55 Ga.* 609 (1), it was held that a continuous embankment necessary to make access to a bridge, so as to pass teams and wagons over it, was a part of the bridge. In the opinion, Judge Jackson said: "The bridge would be useless without access to it; and the good sense of the rule is supported by authority." See also 1 Words and Phrases, 869 et seq.; *City Council of Augusta* v. *Hudson,* 94 *Ga.* 135. In *Sav., F. & W. Ry. Co.* v. *Daniels, 90 Ga.* 608, Mr. Justice Simmons quotes with approval from Elliott on Roads and Streets, 25: "Whether a structure is or is not a bridge may sometimes be a question of fact. The structure may be of such a peculiar construction, or so peculiarly located in the particular case, as to require its character to be determined by the jury of the particular instance. So it must sometimes be that what are parts of a bridge is a question to be determined as one of fact and not of law. Generally, however, the question of what is or is not a bridge is for the court and not the jury."

The averments in the present petition are that that part of the public road which connected the bridge with the highway was in a defective condition. The bridge would be useless unless connected with the highway, and, therefore, that which was necessary to connect it as an approach to the highway was an essential part of the bridge itself. Under these averments it can be safely held, as matter of law, that the defect complained of was a defect in the bridge. Such being the case, the county authorities were under a duty to exercise ordinary care to keep the same in repair, and were liable to a traveler for any damage resulting from a failure to discharge this duty. *Warren County* v. *Evans, 118 Ga.* 200. It is incumbent upon the plaintiff to show that the county authorities knew of the defect, or that it had existed for such a length of time that knowledge of the same would be presumed. 4 Ency. Law, 944. It is alleged that the road commissioners knew of the defect, and the overseers of the road in that district had notice of the defect. As against a general demurrer this was a sufficient allegation of notice to the county. The law imposes upon the road commissioners of the district the duty of appointing road overseers, and

upon these overseers the duty of seeing that the roads are kept in repair, and also imposes upon the road commissioners the further duty of inspecting the roads and observing if the bridges and ferries are in proper repair. The road commissioners have general supervision over the road overseers, and may fine them for neglect of duty. Pol. Code, §589 (1), (2), (8), (9). The law devolves upon the road commissioners of the district the duty of keeping the roads in repair through the instrumentality of the road overseers, and notice to these officers is notice to the county authorities whom they represent. *City of Columbus* v. *Ogletree,* 102 *Ga.* 294 (3). As against a general demurrer the petition set forth a cause of action. *Judgment reversed. All the Justices concur.*