20474, 20475. ATLANTIC COAST LINE RAILROAD COMPANY *v.* SPEARMAN; and *vice versa.*

Decided January 19, 1931.

*Lawrence & Abrahams,* for plaintiff in error in main bill of exceptions.

*Bouhan & Atkinson,* contra.

BELL, J. (After stating the foregoing facts.) 1. Section 2673 of the Civil Code of 1910 provides as follows: "All railroad companies shall keep in good order, at their expense, the public roads or private ways established pursuant to law, where crossed by their several roads, and build suitable bridges and make proper excavations or embankments, according to the spirit of the road laws." Section 2674 then defines the extent of such crossings in the following language: "Such crossings include the width of land on both sides of the road allowed by charter or appropriated by the company therefor, and for as many feet beyond, each way, as is necessary for a traveler to get on and off the crossing safely and conveniently." In one of the grounds of the motion for a new trial error is assigned upon a portion of the charge of the

court which undertook to construe the provisions of section 2674 as just quoted, the language of the excerpt complained of being as follows: "It is contended by the plaintiff in this case that that applies to making the crossing as it goes over the railroad so much · wider than the actual road established by the highway department as may be necessary to make it a safe crossing. I do not agree to that construction of the law. My construction of that language is, that the obligation is upon the railroad, at such a crossing, to preserve and make proper and safe that crossing to the extent of its right of way, or so much further as may be necessary to make it a proper crossing, as to approaches, as well as to actual crossing of the tracks of the railroad company."

This charge was excepted to upon various grounds, raising, as contended by counsel for the plaintiff in error, the following questions: (1) whether sections 2673 and 2674 of the Civil Code have been superseded or repealed by the act of 1919 creating the State highway department and a system of State roads; (2) whether it was error for the court to instruct the jury that it was incumbent upon the defendant to keep the crossing in good order as to approaches thereto along the highway, that is beyond that portion of the highway actually occupied by the railroad tracks; (3) whether the instructions as to the duty of the railroad company to preserve and maintain the crossing was so vague and indefinite as to constitute reversible error.

There is no merit in the contention that sections 2673 and 2674 were superseded or repealed by the act creating the State highway department and establishing a system of State roads. See Ga. L. 1919, p. 242 (Michie's Code of 1926, § 828(1) et seq.; Park's Code Supp. 1922, § 828 (kkk). Section 1 of article 4 of this act provides that "there is hereby created a system of State-aid roads in this State for the purpose of inter-connecting the several county seats of the State, which shall be designated, constructed, improved, and maintained by the State under the State highway department, and the provisions of law; and that the term State-aid roads shall include the State or interstate bridges and other subsidiary structures necessary or desirable in the construction of said roads." In section 1, article 5, it is declared that the State highway department shall "have charge and control of all road or highway work designated or provided for, or done by the State or upon the State-aid

roads; to designate, improve, supervise, construct and maintain a system of State-aid roads, provided that no road shall become a part of said system until the same shall be so designated by the State highway board by written notice to the county road authorities concerned." It is upon these provisions that the railroad company predicates its contention as to the repeal of sections 2673 and 2674.

Repeals by implication are not favored, and we have no hesitancy in holding that it was not the purpose of any provision of law relating to the State highway department to relieve the railroad companies of the duty imposed by sections 2673 and 2674 of the Civil Code. The control of the public roads brought into the State system was merely transferred from the counties to the State, and the duty as to constructing and maintaining proper railroad crossings was not lifted from these companies and placed upon the highway department, but remained as before as a statutory obligation of the railroad companies.

We can not sustain the contention of the railroad company that its duty as to maintaining the crossing extended only to the ground actually occupied by the highway and crossed by the tracks, and did not include any obligation as to approaches. The instruction that it was the duty of the company to maintain the crossing to the extent of the right of way, "or so much further as may be necessary to make it a proper crossing, as to approaches, as well as to actual crossing of the tracks of the railroad company," contained as to the defendant a proper construction of section 2674, which necessarily includes such reasonable approaches to the tracks from the highway as are "necessary for a traveler to get on and off the crossing safely and conveniently."

Section 748 of the Code creates a liability on the part of counties for injuries from defective bridges. Approaches are not mentioned; and yet in *Howington* v. *Madison County,* 126 *Ga.* 699 (55 S. E. 941), the Supreme Court held that "the term bridge includes all the appurtenances necessary to its proper use, and embraces its abutments and approaches," and that whatever "is necessary as an approach, to connect the bridge with the highway, is an essential part of the bridge itself." See also, in this connection, *Morgan County* v. *Glass,* 139 *Ga.* 415 (4) (77 S. E. 583).

There was no evidence to authorize an inference that the automobile was damaged by reason of any defective approach to the

crossing, the evidence for the plaintiff showing that it was stalled upon that part of the right of way actually occupied by the public road as it crossed the tracks, and the evidence for the defendant tending to show that when the automobile was struck it was standing, not at all upon the crossing, but at a point upon the track some 78 feet north of the crossing. In this state of the record it would seem that any reference by the court to the question of approaches was irrelevant; but even so, this would not require a reversal of the judgment. The defendant was not harmed. Nor was the defendant prejudiced by any vagueness in the charge with reference to the duty of the defendant as to maintaining the approaches, even assuming that the instruction may have been vague or indefinite in this respect.

2. The petition did not charge any negligence on the part of the railroad company in failing to blow the whistle, but alleged merely that the engineer was negligent in failing to keep and maintain a proper lookout, and in failing otherwise to exercise due caution in approaching the crossing. For this reason, and because the evidence showed that the whistle was actually blown, it is contended that the court erred in charging the jury that portion of the act of 1918 (Ga. L. 1918, p. 212) as to blowing the whistle. The record shows, however, that the excerpt complained of was given merely as a part of an instruction expressing the substance of section 2 of the "blow-post law," which imposes not only the duty of blowing the whistle but also the duty of the engineer to keep and maintain a constant and vigilant lookout along the track ahead of the engine, and otherwise to exercise due care, in approaching the crossing.

It is not cause for a new trial that the judge gave in charge to the jury an entire statutory or code provision, a part of which was applicable, and a part inapplicable, to the case under consideration, where it is apparent that the reading or charging of the inapplicable part was not calculated to mislead the jury, or was in any other way prejudicial to the rights of the complaining party. *Georgia R. Co.* v. *Wallis,* 29 *Ga. App.* 706 (5) (116 S. E. 883); *Western & Atlantic R. Co.* v. *Mathis,* 32 *Ga. App.* 308 (122 S. E. 818); *Eagle & Phœnix Mills* v. *Herron,* 119 *Ga.* 389 (3) (46 S. E. 405); *Martin* v. *Hale,* 136 *Ga.* 228 (2) (71 S. E. 133).

3. In ground 3 of the motion for a new trial error is assigned

upon the following charge of the court: "I say with reference to this allegation of the conduct of the engineer—conduct regarding any engineer —that failure to do so has been declared by law to be an offense against the criminal law, and that failure would mean negligence per se." It is evident from the record that the "allegation" referred to was the averment in the petition that the engineer had failed to keep a proper and vigilant lookout ahead of the engine, and to otherwise exercise due care in approaching the crossing, as required by the act of 1918, section 2 of which was quoted in the petition. Following a recitation of the terms of this act, it was further alleged that the engineer failed to comply with "the law above quoted." The exceptions to the above instructions were as follows: "(1) The allegations of the petition did not charge the alleged conduct of the engineer to be negligence per se. (2) There was no evidence upon which to predicate such a charge. (2 a) There was no pleading to authorize it. (3) The undisputed evidence showed that the engineer in charge of the train had not been guilty of conduct amounting to negligence per se, and the charge of the court was inapplicable and authorized the rendition of a verdict not authorized by the evidence. The undisputed evidence showed that a failure to blow for the crossing was not a proximate cause of the injury."

There is no merit in the contention that the allegations of the petition did not aver that the conduct of the engineer amounted to negligence per se. The petition did allege a violation of a duty imposed by statute, and this was the same as charging negligence per se. *Seaboard Air-Line Railway* v. *Hollis,* 20 *Ga. App.* 555, 559 (93 S. E. 264). The failure of an engineer to comply with the provisions of the act of 1918 is declared by the act to be a misdemeanor. "The violation of a penal statute proximately causing an injury is negligence per se, and the court may so instruct the jury." *Louisville & Nashville R. Co.* v. *Hames,* 135 *Ga.* 67 (4) (68 S. E. 805). Both the pleadings and the evidence authorized the charge complained of. In the brief filed for the defendant it is urged that this instruction was so vague and indefinite as likely to have confused the jury upon an important issue in the case, and that for this reason a new trial should be granted. See *Atlantic Coast Line R. Co.* v. *Canty,* 12 *Ga. App.* 411 (77 S. E. 659). But as will be seen from the above, the assignments of error do not raise this

question, and we will here decide only those questions that are raised by the exceptions.

4. The court instructed the jury as follows as to forms of verdict: "If you find for the plaintiff in the case, your verdict would be, 'We, the jury find for the plaintiff' such an amount, being the value of the property destroyed, unless there was negligence upon both sides, under the law of comparative negligence which I have given you, in which event the amount of that recovery would be reduced in proportion to the amount of default that was attributable to him, the plaintiff in the case; and you would state upon which count of the declaration you find it. If you find, on the ground of constructive knowledge of the defendant of the conditions there set out, in favor of the plaintiff, then your verdict would be, 'We, the jury, find for the plaintiff on the first count of the declaration.' If you find upon the theory of actual knowledge of the defendant's employees, your verdict should be 'We, the jury, find on the second count of the declaration' so much money. But if you find against the plaintiff on his claim, and should find that the defendant is entitled to recover, you would find a verdict, 'We, the jury, find for the defendant against the plaintiff' so much money. Now, whatever your verdict is, it will be signed and dated by your foreman, and will be entered upon one of the papers constituting the pleadings, that go out to you and with you."

In one of the grounds of the motion for a new trial the defendant complains that the charge was error because it failed to instruct the jury as to the form of the verdict in the event they simply found for the defendant, without awarding damages to either party. The record shows that the court elsewhere instructed the jury that "if the negligence of the plaintiff and the defendant be equal, there could be no recovery," and it is improbable that the jury would have failed to make a proper finding in favor of the defendant if they had concluded that both parties were equally negligent, notwithstanding the court did not in specific terms instruct them as to the form of such a verdict. See *Seaboard Air-Line Ry. Co.* v. *Shensky*, 36 *Ga. App.* 163, 166 (6) (136 S. E. 178).

Moreover, the fact that the verdict was in favor of the plaintiff for the full amount sued for shows conclusively that the jury did not believe that the plaintiff was guilty of any negligence whatsoever, or that there was even cause for reducing the damages, under

the comparative negligence rule as fully stated in the charge of the court. It is thus conclusive from the record that the defendant would not have obtained a general verdict in its favor even if the court had specifically stated the form of such a verdict, and that the omission to give such form was harmless. Cf. *O'Donnelly* v. *Stapler,* 34 *Ga. App.* 637 (4) (131 S. E. 91); *Hoffman* v. *Franklin Motor Car Co.,* 32 *Ga. App.* 229 (7) (122 S. E. 896); *Dunbar* v. *Davis,* 32 *Ga. App.* 192 (122 S. E. 895).

5. Error is assigned upon the failure of the court to give in charge the provisions of section 5749 to the effect that where a party has evidence in his power and within his reach, by which he may repel a claim or charge against him, and omits to produce it, or, having more certain and satisfactory evidence in his power, relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim is well founded.

It is not alleged that there was any timely request in writing for such an instruction, and this principle of law, even if applicable at all, was not so directly applicable that a mere failure or omission to charge it constituted cause for a new trial. *Bishop* v. *Georgia National Bank,* 13 *Ga. App.* 38 (4) (78 S. E. 947); *Branch* v. *Bishop,* 135 *Ga.* 110 (2) (68 S. E. 1021); *Cooper* v. *Nisbet,* 119 *Ga.* 752 (3) (47 S. E. 173).

6. As indicated in the statement preceding this opinion, the petition was in two counts. The court told the jury that if they found for the plaintiff, they should specify the count upon which their verdict was predicated. The jury failed to do this, however, returning a verdict in the following form: "We, the jury, find for the plaintiff in the sum of $798." This verdict was made on December 10, 1929, and what is known as a sealed verdict, after the filing of which with the clerk the jury dispersed. "Such dispersal was permitted under an agreement entered into between counsel for plaintiff and defendant, approved by the presiding judge, which agreement was as follows: that the jury should return a verdict under seal, which should be opened by the clerk of court and its contents communicated to counsel without the presence of the parties in court, and if there was any informality in the verbiage of the verdict, it could be corrected without prejudice to the rights of the parties. Said verdict was returned as aforesaid, opened, and its contents communicated to counsel on December 10."

On the morning of December 11, after the jury had dispersed on the previous afternoon, counsel for the plaintiff called the attention of the court to the fact that the verdict did not specify upon which count of the petition the verdict was based. The court then impanelled the jury, over objection of counsel for the defendant, and instructed them as follows: "This case, as I explained to you on yesterday, was brought in two counts, and I charged you, when you retired, if you found a verdict for the plaintiff, you must indicate on which count you found the verdict. Now, the first count charged actual knowledge by the engineer of the conditions at the crossing, with respect to persons being on it. Then the second count charges constructive notice. That is to say, that he should have known, under the allegations of the petition, and the proof submitted—have known, and have done what he should have done had he had actual knowledge. Now, I am returning you these papers for you to reframe your verdict and to indicate upon which of these counts the defendant is liable. If you find there was actual knowledge, then you are to find your verdict, or to add to your verdict, that it is on the first count. If it is based upon constructive knowledge, then you must add to your verdict, 'On the second count.'" The jury retired and later amended their verdict so as to show that it was found upon the second count of the petition. The defendant in its motion for a new trial contended that the court erred in resubmitting the case to the jury for further deliberation, after they had once returned a verdict and dispersed, and that it was error to recharge the jury as to their findings of fact.

In our view of the case the effect of the verdict was not changed by the amendment made thereto by the jury. If this is true, the defendant was not hurt by the resubmission and recharge, irrespective of the legality of this further proceeding, or of whether the agreement of counsel comprehended it. The attorneys have treated the case as though the two counts of the petition were different, in that the first count charged actual knowledge by the defendant of the presence of the automobile upon the crossing, and that the second count charged constructive knowledge of such fact. It is true that the second count alleged constructive knowledge, but we think the first count did the same and nothing more, and thus that the two counts were identical. This question is controlled by paragraph 5 of the first count of the petition, which is as follows:

"Petitioner shows that the lights were on the said automobile, so that it was plainly visible to the engineer of the railroad train; that the headlight·from the engine of the said train showed the automobile, and showed petitioner and his friends working on the automobile trying to get it off the tracks, and that the engineer and fireman of said freight train saw the automobile, or could have seen the same, had they kept proper lookout ahead of the engine, as required by law; but notwithstanding these facts, they ran their train into·and over your petitioner's automobile, wrecking it as aforesaid." The allegation that the engineer and the fireman saw the automobile, or could have seen it if they had kept a proper lookout, amounted to a charge of constructive knowledge only. *Thomas* v. *Georgia Granite Co.,* 140 *Ga.* 459, 460 (79 S. E. 130). The two counts of the petition being identical, it was immaterial whether the jury predicated their verdict upon the one or the other, and the defendant suffered no injury by what occurred after the first return of the verdict. *Hughes* v. *Bivins,* 31 *Ga. App.* 198 (6) (121 S. E. 590).

7. The evidence authorized the verdict, and there was no error in refusing a new trial.

*Judgmnt affirmed on the main bill of exceptions; cross-bill of exceptions dismissed. Jenkins, P. J., and Stephens, J., concur.*